## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK SUNDBERG, | : | No. 4:17-CV-00063 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| MARK D. DIROCCO, DAVID HIMES, | : | |
| PAULA REBER, MARK TEMPLE | : | |
| and LEWISBURG AREA SCHOOL | : | |
| DISTRICT BOARD OF DIRECTORS, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### AUGUST 8, 2017

When the American starlet Mae West remarked of a friend, "there is less here than meets the eye," few could predict this same observation would one day apply to a matter pending before this Court. This case involves facially enticing allegations by a former high school athletics coach who contends that the non-renewal of an annual coaching contract violated his constitutional rights.

To be sure, I take quite seriously any allegation that public entities are willfully stifling inherent liberties. However, upon closer inspection, it is apparent that the Plaintiff's allegedly protected speech was made in his official capacity as a coach and did not touch upon any matters of public concern. As such, Plaintiff's

vague and shadowy pleadings must yield to his employer's interest in maintaining an orderly and effective workplace.

Plaintiff's amended complaint will therefore be dismissed with prejudice. To conclude otherwise and expend additional resources on this matter would disserve those cases in which cognizable constitutional violations have actually occurred.

## I.     BACKGROUND

The facts underlying this action, although perhaps controversial to some in the Lewisburg School District, do not give rise to a federal cause of action. From the outset, I note that my task is not to determine whether I personally agree with Lewisburg's decisions or whether I believe they were carried out in the most appropriate manner. The only question with which I am concerned is whether the circumstances surrounding the non-renewal of an annual athletics coaching contract violates the First or Fourteenth Amendments of the Constitution of the United States. With that framing in mind, I turn to the operative facts.

Plaintiff Mark Sundberg was a high school social studies teacher for 25 years, as well as the boys' track coach and the head cross-country coach at Lewisburg Area High School in Lewisburg, Union County, Pennsylvania.[1] Following retirement from his position as a teacher in June of 2012, he continued to coach both the track and cross-country teams on a one-year basis until the end of

---

[1]    Plaintiff's Amended Complaint, ECF No. 11, at ¶¶ 11–14.

2015-2016 school year. At that time, he was informed that the School District was posting all head coaching jobs and would likely not be renewing his coaching contracts for the subsequent year.[2]

Later, at a May 2016 meeting, Mr. Sundberg was formally notified that he would not be recommended to coach the teams for the following season. When asked for an explanation, he was told by High School Principal Paula Reber that the school wanted to "go in another direction."[3] After not having been issued an annual contract for 2016, Mr. Sundberg sent a letter to his student-athletes regarding the dismissal, which also made its way to the Lewisburg cross-country alumni website.[4] Coach Sundberg was reoffered the position 29 hours later.[5]

In November 2016, during the following school year, Mr. Sundberg received a letter from the School District's Superintendent, Mark D. DiRocco, indicating that Mr. Sundberg had failed to follow certain of the District's policies.[6] Although Mr. Sundberg's pleadings are quite hazy as to the reason for the letter, it appears to be the product of a chain of events whereby he housed an athlete who purportedly

---

[2]   *Id.* ¶¶ 15, 45–47.

[3]   *Id.* ¶¶ 45–49.

[4]   *Id.* ¶ 54.

[5]   *Id.* ¶ 55.

[6]   *Id.* ¶ 69.

had been kicked out of his own home.[7] The student's parents then complained of Mr. Sundberg's actions to the School District.[8]

Shortly thereafter, all coaches were notified that the School District would again be reposting all coaching jobs for the 2017-2018 school year.[9] At the time of the filing of this lawsuit and the Court's July 6, 2017 oral argument, Plaintiff had not been reoffered either the track or cross-country coaching positions for the upcoming school year.[10]

As a consequence of this typically discretionary decision not to hire him as a coach, the Plaintiff has brought rather grandiose First and Fourteenth Amendment claims against the School District that he once called home. In particular, he complains of retaliation, conspiratorial acts, and due process violations as against several of the School District Defendants, including the superintendent, two principals who oversaw the school at which he worked, the athletic director, and the School Board.[11]

The sunset of Mr. Sundberg's Green Dragon coaching career seems to have come a long time in the making. Indeed, Plaintiff's own complaint paints all too suggestive a picture of the turbulent relationship between the Defendants and

---

[7] *Id.* ¶¶ 64–68.

[8] *Id.* ¶ 67.

[9] *Id.* ¶ 75.

[10] *Id.* ¶ 76.

[11] *Id.* ¶¶ 2-6.

himself. On the face of that document alone, it is plain to see that this relationship deteriorated over a number of years, leading to the inevitable result that has brought the Plaintiff to the courthouse in this action.

The Plaintiff, by his own admission, had received numerous verbal and written warnings to change his behavior as the coach of the cross-country and track teams. In the fall of 2012, for instance, Mr. Sundberg was called to the then-principal's (Defendant David Himes's) office for a meeting. During this meeting, it was explained to the Plaintiff that the District was not satisfied with the way he had managed his teams in the past.[12]

In July 2015, as Mr. Himes prepared to retire from his position as principal, he wrote the following to his successors in an evaluation of Coach Sundberg's performance:

> As retiring Principal of the high school, I believe Mr. Sundberg should not be rehired as a coach. His actions over the past years have damaged the reputation of the school with the PIAA District IV Committee. He continues to be confrontational with students and parents who play club sports and does not show proper respect for those in authority. It is my belief that allowing Mr. Sundberg to continue in his positions will place the District and all of our athletic teams in jeopardy![13]

Subsequent to these events, Plaintiff retained counsel and filed the instant law suit. "Quite honestly when we filed it," Plaintiff's counsel Matthew J. Zeigler,

---

[12]   *Id.* ¶¶ 22–23.

[13]   *Id.* ¶ 30.

Esquire, explained at oral argument, "we . . . thought that it would cause the School District to be willing to settle."[14] In accordance with the following discussion, the Defendants' motion to dismiss is granted, and Plaintiff's amended complaint is dismissed with prejudice.

## II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading," and "streamlines litigation by dispensing with needless discovery and factfinding."[15] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[16] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[17]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6)

---

[14]   Tr. of July 6, 2017 Oral Arg. at 7:12–15.

[15]   *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)); *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[16]   *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[17]   *Neitzke*, 490 U.S. at 327.

motions.[18] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal* the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[19] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[20]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[23] Moreover, "[a]sking for plausible grounds . . . calls for enough facts

---

[18] *See* Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[19] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009); Wasserman, *supra*, at 319–20.

[20] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[21] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[22] *Iqbal*, 556 U.S. at 678.

[23] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[24]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[25] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[26]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[27] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[28] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[29] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[30]

---

[24]   *Twombly*, 550 U.S. at 556.

[25]   *Iqbal*, 556 U.S. at 679.

[26]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[27]   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[28]   *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[29]   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[30]   *Iqbal*, 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third

Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[31]

## III. ANALYSIS

### A. Defendants' Motion Is Granted As To Plaintiff's First Amendment Claim, Because He Has Failed To Allege Sufficient Facts Plausibly Suggesting That He Spoke On A Matter Of Public Concern And That His Speech Caused Him Not To Be Hired.

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish both

that the conduct complained of was committed by a person acting under color of

state law and that the conduct deprived the plaintiff of rights, privileges, or

immunities secured by the Constitution or laws of the United States.[32] In this case,

the Plaintiff alleges that his firing was retaliatory conduct that effectively deprived

him of his constitutional right to free speech.

To state a First Amendment retaliation claim, the Plaintiff must prove that

"(1) his speech is protected by the First Amendment and (2) the speech was a

---

[31] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

[32] *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993).

substantial or motivating factor in the alleged retaliatory action."[33] Because the First Amendment protects a citizen's right to speech, government actors may not retaliate against a citizen when he or she chooses to exercise that right.

If a plaintiff is able to establish both elements of that claim, the burden is shifted to the defendant to prove that "the same action would have been taken even if the speech had not occurred."[34] If the defendant can establish that proposition, no violation of the First Amendment may be found.

Both parties agree that public employees do not surrender all of their First Amendment rights simply "by reason of their employment."[35] By the same token, the Supreme Court has recognized that the government has an interest as an employer in "promoting the efficiency of the public services it performs through its employees."[36] As the Court noted in *Pickering*, the goal of a case such as this is to balance that governmental interest with the interests "of the teacher, as a citizen, in commenting upon matters of public concern."[37]

In order to establish whether or not a specific statement is covered by the First Amendment, the Court must conduct a preliminary inquiry, which is solely a

---

[33] *Dougherty v. School Dist. Of Philadelphia*, 772 F.3d 979, 986 (3d. Cir. 2014).

[34] *Id.*

[35] *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

[36] *Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois*, 391 U.S. 563, 568 (1968).

[37] *Id.*

question of law.[38] I first must determine whether the Plaintiff spoke "as a citizen, not as an employee."[39] Second, I must decide whether the speech involved a matter of public concern.[40] Third, I must consider whether the government lacks an "adequate justification" for "treating the employee differently than the general public based on its needs as an employer."[41]

When employee speaks pursuant to his official duties, he is not speaking as a citizen for First Amendment purposes, and those communications are not entitled to absolute protection from employer discipline.[42] As such, if an employee is speaking to a topic that would reasonably be construed as being part of his or her "daily professional activities,"[43] that employee is not entitled to blanket First Amendment protection.

The Court in *Garcetti* explained that defining when an employee is speaking pursuant to his official duties requires a "practical" inquiry.[44] There is no simple framework for defining the boundaries of an employee's official duties, and it is heavily dependent on the facts at issue, requiring a court to examine both the

---

[38] *Miller v. Clinton County*, 544 F.3d 542, 548 (3d. Cir. 2008).

[39] *Dougherty,* 772 F.3d at 987.

[40] *Id.*

[41] *Id.*

[42] *Garcetti,* 547 U.S. at 421.

[43] *Id.* at 422.

[44] *Id.* at 424.

plaintiff's "de facto and de jure responsibilities."[45] The question thus becomes "whether the speech at issue is itself ordinarily within the scope of an employee's duties."[46]

The test for determining whether speech touches upon a matter of public concern is similarly flexible.[47] The Supreme Court has previously explained that such speech is at the heart of First Amendment protections,[48] and that it seeks to encourage "uninhibited, robust, and wide-open" debate on public issues.[49] However, not all speech "is of equal First Amendment importance."[50] In cases where the speech is primarily of private significance made in the course of one's official duties, First Amendment protections are less expansive. While the Court has not provided clear rules for distinguishing between speech of public and private concern, it has outlined general principles that help guide this Court's inquiry into the facts at hand.

Speech is more likely to be considered a matter of public concern when it may "be fairly considered as relating to any matter of political, social, or other

---

[45]   *Dougherty*, 772 F.3d at 989.

[46]   *Lane v. Franks*, 134 S.Ct. 2369, 2373 (2014).

[47]   *Snyder v. Phelps*, 562 U.S. 443, 452 (2011).

[48]   *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–759 (1985).

[49]   *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

[50]   *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (quoting *Dun & Bradstreet*, 472 U.S. at 758).

concern to the community."[51] The same may be said of speech that "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."[52] Therefore, deciding in which basket the speech at issue belongs also requires me to examine the "content, form, and context" of the speech.[53]

If the Plaintiff establishes both the public concern and causation prongs, the Court would next examine whether or not the government had "adequate justification for treating the employee differently from any other member of the general public."[54] Generally, a government entity is allowed broader discretion in its decision to restrict speech "when it acts in its role as employer."[55]

Turning to the facts of this matter, it is evident that the Plaintiff has failed to state a claim upon which relief can be granted under the prevailing law. For starters, the Plaintiff has failed to establish that his speech is protected under the First Amendment, as he undoubtedly falls short of showing that he spoke in his capacity as a private citizen on a matter of public concern rather than as a public employee on matters of official school district business.

---

[51] *Connick v. Myers*, 461 U.S. 138, 146 (1983).

[52] *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004).

[53] *Dun & Bradstreet*, 472 U.S. at 761.

[54] *Garcetti*, 547 U.S. at 418.

[55] *Id.*

Initially, I also note the exceptionally vague language with which the Plaintiff attempts to allege that he engaged in protected speech. The Plaintiff's amended complaint fails to explain what sort of speech the Court should even be evaluating. By merely alleging that he "advocated" for various outcomes and "engaged in frequent acts of speech, advocacy, association and the like," the plaintiff avoids any specificity that would enable me to better gauge the plausibility of his claims. Such shadowy language makes me question whether this diction was perhaps purposely chosen so as to obfuscate, rather than elucidate, the operative facts underlying this lawsuit.

The lead paragraph in Plaintiff's amended complaint is a prime example of this vagueness. It does little to establish that Mr. Sundberg was speaking on any matters of public concern. The allegations, set forth at Paragraph 20, are conclusory and ambiguous under *Twombly* and *Iqbal*, and seems to suggest that Plaintiff's speech—to the extent that it even may be characterized as such—was made in his capacity as a coach and focused on high school athletics policies. It reads as follows:

> 20. Beginning in 2012, Coach Sundberg engaged in protected First Amendment activity, explicitly including the following:
>
>   a. He advocated, speaking directly with the administration, for coach autonomy in situations where the administration, vis-à-vis Principal David Himes attempted to micromanage the training of Student/Athletes;

b. He advocated, speaking directly with the administration, for Student/Athlete safety in similar situations;

c. He advocated, jointly with a number of other local coaches, for District wide changes in meet locations and for other changes in District practice and policy intended to protect Student/Athletes and advance their interests;

d. He advocated, and encouraged parents, students and other members of the community to advocate, on behalf of his continuing as a Coach so that he would be able to care for the best interests of the program and the students;

e. He acted to protect a Student/Athlete who was also an adult who was experiencing domestic abuse, neglect and then homelessness by offering that Student/Athlete a place to live temporarily, speaking and cooperating with police in such efforts and speaking and cooperating with other members of the School District in such efforts, in order to protect the interests of that Student/Athlete;

f. Engaged in frequent acts of speech, advocacy, association and the like, speaking with parents, administrators and officials from his and other School Districts or School related athletic associations, in order to advance and protect the interests of the team and the Student/Athletes.

The allegations above suggest nothing other than the Plaintiff at some point communicated with administrators regarding management of his team's day-to-day activities or his employment as a coach. Certain conversations were apparently also had in his capacity as a coach to his students, their parents, and other coaches or athletic officials. Nothing in those allegations suggests that Mr. Sundberg spoke about any subject other than those directly related to his official duties as a coach.

Moreover, the Plaintiff has pled little context beyond superficial legal phrases that would enable this Court to conclude otherwise. For instance, Plaintiff's pleadings shed sparse light upon the manner in which his communications were made, what channels were used to transmit them, who the audience was, and what the substance of the speech covered. Although Plaintiff is entitled to certain reasonable inferences as the nonmovant, it is not this Court's task to fill in the blanks, tie up every loose end, and otherwise construct a factual narrative that would give rise to a plausible claim on Plaintiff's behalf.

Plaintiff's theory of the case also takes a rather scattershot approach. Indeed, the speech that matters in a refusal to hire case is the speech that is made to or reasonably known by the decisionmaker. For the speech to be the legal cause of the employment action, the appropriate decisionmaker must have known about it. To that end, I note that Plaintiff's allegations about his speech to parents, alumni, other coaches, etc. are largely tangential to the present motion, absent some causal showing as to their relevance.

In performing their "daily professional activities" *Garcetti*, 547 US at 422, public school employees, like Mr. Sundberg here, face a steep uphill climb when they bring free speech claims. *See, e.g.*, *Schul v. Sherard*, 102 F. Supp. 2d 877, 885 (S.D. Ohio 2000) (high school track coach's speech did not touch upon a matter of public concern when he advocated that his athletes should increase their caffeine

intake to enhance their performance at upcoming meets); *Davis v. McCormick*, 898 F. Supp. 1275, 1278 (C.D. Ill. 1995) (high school volleyball coach's speech did not touch upon a matter of public concern when she discussed fundraising with her players, team loyalty and camaraderie, and reminders for pursuing collegiate recruitment process); *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153 (3d Cir. 2008) (Fisher, J.) (high school football coach's speech did not touch upon a matter of public concern when he bowed his knee and joined a moment of silent prayer with his team, intending to promote solidarity, help form the team into a cohesive family unit, and show respect for the players' prayers). Indeed, these examples, each of which arguably demonstrates advocacy of greater breadth and public importance than Mr. Sundberg's, illustrate just how demanding a showing of plausibility must be when applied to public schoolteachers and coaches.

So too does Plaintiff's argument conflate action with speech or other expressive conduct. Indeed, the incident involving his housing a student who was purportedly kicked out of his own home is unlikely protected First Amendment conduct. The act itself, whether admirable or an overstepping of his role—and I cannot discern which it may be from the sparse pleadings alone—is undoubtedly an instance of conduct, not speech.

"We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends

thereby to express an idea."[56] In distinguishing conduct from speech, the Supreme Court of the United States has considered "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it."[57] Indeed, even "when 'speech' and 'nonspeech' elements are combined in the same course of conduct," the Court has recognized that "a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."[58]

Pushing the limits of Plaintiff's contention, I asked at oral argument whether Mr. Sundberg would still have engaged in speech rather than conduct if he had, for instance, assisted an elderly lady in crossing a street during a cross-country meet. Counsel for Plaintiff suggested that act still would constitute speech.[59] Applying the law set forth by the Supreme Court above, that simply cannot be the case. Although Mr. Sundberg's actions may have been well-intentioned, that does not mean they were intended to express a message that went beyond his role as a coach and mentor—or express a message at all.

---

[56] *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

[57] *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

[58] *O'Brien*, 391 U.S. at 376.

[59] Tr. at 22:08–13.

In response, Plaintiff contends that certain reports he made to the police in connection with this particular student could constitute protected speech. Although such reports likely entailed speech, such speech was not protected by law. In particular, such reports were provided directly to the authorities, concerned a student within his control, were likely made pursuant to mandatory abuse reporting duties, and were not pled as factors in the School District's coaching decision.[60]

The Plaintiff's argument for his First Amendment claim is also based on internal logic inconsistencies and conclusory statements that cannot survive a motion to dismiss. In particular, the Plaintiff attempts to narrow his job description such that every statement he ever made must be considered to have fallen outside the scope of his official duties. This rhetorical attempt fails for two reasons. First, the Plaintiff's actions and speech took place in the course of his employment as a coach, as illustrated by the job description that Plaintiff himself submitted. Second, even if the statements were made as a citizen rather than an employee, they would not touch upon any matter of public concern. They relate solely to administration of the School District's track and cross-country programs.

To this end, the Plaintiff's amended complaint begins with the proposition that he had "various duties related to all of his coaching positions."[61] However,

---

[60] *See Foraker v. Chaffinch*, 501 F.3d 231 (3d Cir. 2007) (officers statements were made in their official capacity where "[t]heir positions . . . required them to report" as much).

[61] Plaintiff's Amended Complaint, ¶ 17.

seeming to depart from this characterization, the Plaintiff's brief in opposition to Defendants' motion to dismiss rather bluntly attempts to artificially confine his responsibilities by suggesting that "he was only employed to athletically develop the students."[62]

The Plaintiff's own argument, however, is most clearly undermined by evidence that he himself has put forth. In fact, Coach Sundberg submitted his own evaluation form, filled out by Principal Himes and Athletic Director Temple. The attachment clearly shows that the Plaintiff's job duties went well beyond the singular task to "athletically develop the students" and even beyond the mere administrative duties that Plaintiff's counsel described at oral argument.

In determining whether speech is entitled to First Amendment protections, it is neither necessary nor sufficient that a responsibility be listed in the employee's job description or administrative evaluation forms.[63] Instead, as determined in *Garcetti*, the question is whether or not the speech was made pursuant to the employee's official duties. In other words, the Court considers whether this was something that the employee "was employed to do."[64] The Supreme Court has

---

[62]   Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, ECF No. 15, at 5.

[63]   *Garcetti*, 547 U.S. at 424-5 (2006).

[64]   *Id.* at 421.

further clarified that the key issue is "whether the speech at issue is itself ordinarily within the scope of an employee's duties."[65]

"[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."[66] Indeed, all—and more—of the topics gleaned from Mr. Sundberg's amended complaint fall precisely within his official job description. The Plaintiff was officially evaluated on, among other facets of his job: maintaining a rapport with athletes, their parents, the community, the coaching staff, and the media; earning the respect of his team; preparing players for competition; organizing practice sessions; maintaining an organized program; maintaining appropriate records; promoting student involvement in the program; preparing athletes mentally and physically; handling athletic injuries appropriately; maintaining player control; using updated coaching methods; and fulfilling all pre- and post-game responsibilities.[67]

---

[65]   *Lane v. Franks*, 134 S.Ct. 2369, 2379 (2014).

[66]   *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[67]   ECF No. 15 at 28–30.

Importantly, I note that those same documents expressly state "[A]ll coaching positions in the Lewisburg Area School District are for one season only. There is no guarantee of employment beyond the completion of the athletic season that you were hired to coach."[68] An employment evaluation completed around that time and submitted for my consideration by Plaintiff reads:

> Your issues with the PHAC Track committee and District 4 committee:
>
> a. Last fall you forwarded emails that encouraged people to email the district committee spreading supposed "truths" about venues and other issues without all the facts. The District 4 President called our high school principal indicating that our school needed to get our coaches under control.
>
> b. Indicating to other District 4 track coaches that the District 4 committee viewed them as "LIARS AND PLAYERS!" and actually sending an email to the coaches addressing them as such. People were offended and I heard about this and received multiple copies of the email. Numerous people commented to me that you were acting as spokesperson for all league coaches yet you were not appointed to that position nor did they feel the same the same way you did. They did not like your approach with the District committee concerning qualification standards and entry of students.
>
> c. Your discussion with Mr. Kelly at the district meet concerning "jury of appeal." Again numerous people commented that you seemed to take this a bit too far.[69]

In addition, the School District has proffered compelling justifications for its actions. It has suggested that employing coaches who adhere to district-wide policy

---

[68]  *Id.* at 32.

[69]  ECF No. 15 at 30.

is a key element in ensuring its athletes' safety and enabling them to achieve peak

athletic performance. So too must a school's coaches abide by the appropriate

codes of conduct and refrain from arguing with meet officials and other athletic

officials. When a coach's conduct begins to expose his school district to potential

liability, the school is not restrained from taking appropriate actions. As I have

noted in the past, "it is not the judiciary's place to substitute its own judgment for

that of a [ ] manager whose day-to-day closeness with . . . operations commands a

certain deference."[70]

Finally, Mr. Sundberg has not satisfied the causation element of a First

Amendment retaliation. To be sure, only his own conjectures connect his speech to

the ultimate employment decision. "To establish the requisite causal connection a

plaintiff usually must prove either (1) an unusually suggestive temporal proximity

between the protected activity and the allegedly retaliatory action, or (2) a pattern

of antagonism coupled with timing to establish a causal link."[71] "In the absence of

that proof the plaintiff must show that from the evidence gleaned from the record

---

[70] *Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 341 (M.D. Pa. 2015), *aff'd*, 660 F. App'x 149 (3d Cir. 2016). *See also Betz v. Satteson*, No. 4:15-CV-00851, 2017 WL 1474275, at *31 (M.D. Pa. Apr. 25, 2017) ("My task as a federal judge is not to second guess her decision, to say whether it was or was not the most proper one pedagogically speaking. Rather, it is simply to determine whether it violated I.B.'s constitutional rights. Because it clearly did not, summary judgment is warranted."); *Warkevicz v. Berwick Area Sch. Dist.*, No. 4:15-CV-01922, 2016 WL 3753108, at *12 (M.D. Pa. July 14, 2016) ("To hold otherwise would open thousands of commonplace school board determinations to second guessing through the judicial system. Suffice it to say, that would be an ill-advised outcome.").

[71] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

as a whole the trier of the fact should infer causation."[72] "A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate."[73]

The bulk of the alleged "speech" by Coach Sundberg occurred in 2016, before he was reoffered the position for the 2016-2017 school year. That much is true of his advocacy to the district administrators, his notification to the community about his position, and his advocacy regarding administration of the subject athletic programs. That temporal fact tends to suggest that the claimed speech played little role in the School District's decisions. Otherwise, this lawsuit would have been necessitated one year earlier than it actually was.

Second, Plaintiff presents no evidence that enables this Court to glean a discriminatory or retaliatory motive particular to Mr. Sundberg from the record as a whole. To the contrary, it is undisputed that all coaching jobs were reposted during both years that are at issue. That being said, Coach Sundberg's retaliation

---

[72] *Id.*

[73] *Id.* "[N]othing precludes a court from determining proximate cause as a matter of law if a jury could not reasonably differ on the issue." *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014) (Fisher, J.). "To put it another way, where there is no issue of fact, the issue of proximate cause is one for the court to determine as a matter of law." *Heeter v. Honeywell Int'l, Inc.*, 195 F. Supp. 3d 753, 758 (E.D. Pa. 2016), aff'd 2017 WL 3128488 (3d Cir. July 24, 2017).

claim fails for this independent reason. Accordingly, this claim will be dismissed with prejudice.

**B.      The Defendants' Motion To Dismiss Is Granted As To Plaintiff's 42 U.S.C. § 1985(3) Conspiracy Claim.**

Under 42 U.S.C. § 1985(3), a plaintiff may seek redress for injured sustained at the hands of a conspiracy "formed for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[74] *Griffin v. Breckenridge*, a decision by the Supreme Court of the United States regarding the scope of liability under the Ku Klux Klan Act, was the first in a line of cases to establish what a plaintiff must prove in order to sustain a claim under that statute.[75] Over time, the Court has clarified that a plaintiff must prove the following to plead a successful § 1985(3) claim: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege.[76]

---

[74]   42 U.S.C. § 1985(3).

[75]   *Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)

[76]   *United Broth. of Carpenters and Joiners of America, Local 610 AFL-CIO v. Scott*, 463 U.S. 825, 828-9 (1983) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-3 (1971)).

Importantly, Section 1985(3) requires the "intent to deprive of equal protection, or equal privileges and immunities,"[77] and therefore, the Plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to survive a motion to dismiss.[78] Our Court of Appeals has held that there are "two distinct aspects" to the "class-based invidiously discriminatory animus."[79] In other words, the Plaintiff must allege that the conspiracy was both "motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."[80]

The Plaintiff's claim under § 1985(3) fails for a number of reasons. First, he fails to establish that a conspiracy of any kind ever existed. Second, he fails to satisfy the identifiable class requirement. Finally, he fails to put forth sufficient facts to show that any alleged discrimination was invidious under the statute.

The Plaintiff simply fails to allege facts sufficient to support the notion of a conspiracy, whether implicit or explicit. The Plaintiff provides no facts to suggest that a conspiracy ever existed among the Defendants. Simply being told that several of the Defendants had participated in an employment decision does not

---

[77] *Id.* at 102.

[78] *Id.*

[79] *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).

[80] *Id.*

satisfy the pleading requirements under *Twombly* and *Iqbal*. Otherwise, every employment decision made or approved by more than one member of a managerial staff would automatically come within § 1985's conspiracy requirement. Rather, conspiracy is something more than parallel action—it requires an agreement to achieve an unlawful objective.[81]

Similarly, the Plaintiff alleges no facts that would support the suggestion of an implied conspiracy based upon circumstantial evidence. His threadbare assertions that the Defendants "conspired together in order to deprive students of an effective advocate," and to "deny the free speech rights of public employees"[82] are insufficient to withstand a motion to dismiss. Courts have noted that "it is not enough to use the term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement."[83]

In addition to his failure to establish a conspiracy intended to deprive him of any rights protected under § 1985, the Plaintiff has failed to establish his membership in any legally cognizable class. Plaintiff's attempts to satisfy this requirement landed far afield from prevailing law and were unappreciated by this Court. For the purposes of a claim under this statute, a class "cannot be defined

---

[81] *See Twombly*, 550 U.S. at 553.

[82] Am. Complaint, at ¶ 90-1.

[83] *Gordon v. Lowell*, 95 F.Supp.2d 264, 270 (E.D. Pa. 2000).

simply as the group of victims of the tortious action."[84] Plaintiff's argument has shifted dramatically between his amended complaint, his brief, and at oral argument. In his amended complaint, the Plaintiff states that he could be considered as representing a class of "student-athletes."[85] Then, in his brief, Plaintiff states the following: "As Counsel points out, the Courts would likely be reluctant to find high school athletes are a protected class."[86] Instead, he changes course and suggests in his brief that the Court should recognize the Plaintiff as being in a protected class because of his age or his status as a public employee.[87]

During oral argument, Plaintiff's counsel was asked to point to any decision from any federal court that recognized student athletes as a class under § 1985. He conceded that he was unaware of any court that had done so.[88] Similarly, the Plaintiff has pointed to no precedent that suggests that public employees would be a recognized class under § 1985. As such, the Plaintiff cannot survive a motion to dismiss on the basis of his threadbare allegations alone.

Even if the Court were to find an identifiable class here, any alleged discrimination would not be considered invidious under existing law. Courts have historically given credence to claims of conspiracy under § 1985(3) only when the

---

[84] *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993).

[85] Pl.'s Complaint, at 90.

[86] Pl.'s Brief n Opposition to Defendants' Motion to Dismiss, 13.

[87] *Id.* at 13-4.

[88] Tr. Oral Argument at 10:06–12.

discrimination is based on a class's "immutable characteristics."[89] Such

characteristics, which are "determined solely by the accident of birth, . . . bear no

relation to ability to perform or contribute to society."[90] As a result, the Third

Circuit has found discrimination on the basis of race, sex, and mental handicap to

be invidious, due to the "irrational and odious nature of discrimination," based on

characteristics individuals have no control over.[91]

In *Farber v. City of Paterson*, for instance, the Third Circuit held that

discrimination based on political affiliation, a mutable characteristic, did not

qualify for protection under § 1985(3). The basis of one's employment is certainly

more closely comparable to one's political affiliation than the color of one's skin

or mental faculties from birth. Additionally, the Plaintiff fails to plead any facts

that give rise to the inference that any alleged discrimination was in fact based on a

discriminatory animus against a class. Absent that nexus, the claim must fail.

Instead, the Plaintiff asserts that the reason for non-renewal of his employment

hinged on actions that he took. The Plaintiff cannot claim discriminatory animus

against a class while arguing that his individual actions caused his firing.

---

[89] *Farber*, 440 F.3d at 142 (3d Cir. 2006).

[90] *Frontiero v. Richardson*, 411 U.S. 677, 687 (1973).

[91] *Novotny v. Great American Federal Savings and Loan Assoc.*, 584 F.2d 1235, 1243 (3d Cir. 1978).

In other words, Plaintiff has failed to plead a causal nexus between any of these alleged class membership characteristics and the ultimate employment action. Indeed, Mr. Sundberg fails to show that his contract was not renewed *because of* his age or his public employment status. To the contrary, the record is replete with suggestions that he was not reoffered the positions based upon the manner in which he personally conducted himself in the past on numerous occasions and because the School District thereafter elected to move in a different direction. Nothing of record whatsoever, not even Plaintiff's own allegations, lend the slightest inference of discrimination based upon such animus. Accordingly, in light of the foregoing reasoning, the Plaintiff's claim of conspiracy under § 1985(3) cannot survive the motion to dismiss.[92] It is dismissed with prejudice.

---

[92] My analysis has considered whether the non-renewal, to the extent that it even may be called that, was an adverse action taken in retaliation for the supposed exercising of constitutional rights. That decision does not rise to the requisite level of adversity and nevertheless fails for the reasons stated above. In addition, Plaintiff somewhat opaquely alleges that the School District included purportedly defamatory statements about him in an internal review. "[W]rite-ups and meetings with supervisors are not materially adverse employment actions." *Griggs v. Univ. Health Sys.*, No. CIV. SA-06-CV-384, 2008 WL 3981814, at *8 (W.D. Tex. Aug. 25, 2008). Neither are "reprimands for insubordination," "meetings with supervisors," and other similar "directions." *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 Fed. Appx. 351, 353 (4th Cir. 2009). Moreover, Plaintiff has not pled a claim for defamation in the operative complaint. Neither has he suggested the requisite publication element to satisfy an actionable defamation claim was ever met. Still more, he has not shown in his pleadings that these allegedly defamatory internal evaluation comments shared a causal nexus in any way with future failures to obtain subsequent employment positions at different institutions or would not have occurred absent his alleged speech.

## C. Defendants' Motion To Dismiss Is Granted As To Plaintiff's Fourteenth Amendment Due Process Claim.

The procedural component of the Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."[93] "Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."[94] Instead, it is "flexible and calls for such procedural protections as the particular situation demands."[95] Thus, "resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected."[96]

As the Third Circuit has described, "To establish a cause of action for a violation of procedural due process, a plaintiff in addition to proving that a person acting under color of state law deprived it of a protected property interest, must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process."[97] In *Mathews v. Eldridge*, the

---

[93]  U.S. Const. amend. XIV.

[94]  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

[95]  *Id.*

[96]  *Id.*

[97]  *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991).

Supreme Court verbalized this inquiry as a balance among: the private interest; the risk of an erroneous deprivation; and the Government's administrative interests.[98]

A due process plaintiff cannot merely "a unilateral expectation" of receipt of his benefit.[99] "He must, instead, have a legitimate claim of entitlement to it."[100] Coach Sundberg cannot plausibly allege the existence of any protected property interest in year-to-year athletics coaching contracts.

"There is no fundamental right to retain public employment."[101] "Those property rights which enjoy procedural due process protection are determined by state law."[102] "Here, under controlling Pennsylvania law, a public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will."[103] In fact, the United States District Court for the Eastern District of Pennsylvania has already held that a football coach had no property interest in a year-to-year contractual coaching position.[104] Even "[w]hen a term employee is terminated before his contract ends but he is fully compensated for the entire term of the contract, the employee cannot recover under

---

[98]  *Mathews*, 424 U.S. at 334.

[99]  *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984).

[100]  *Id.*

[101]  *Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d 395, 405 (E.D. Pa. 2001).

[102]  *Id.*

[103]  *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).

[104]  *Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d 395, 405–06 (E.D. Pa. 2001).

§ 1983."[105] The same result was reached just last year in *Paterno v. Pennsylvania State Univ.*, as the subject coaches could not allege that their employment "was anything other than at-will" or that there was any "special contract requiring that they could only be terminated for cause."[106]

Not only does Plaintiff's due process claim fail for lack of a protected interest, but it also fails because he nevertheless received adequate notice and due process. Nothing in the amended complaint can be interpreted to say that Mr. Sundberg was not put on notice of the job postings, afforded appropriate evaluations for prior coaching season, or invited to meetings to discuss the School District's concerns and recommendations. In fact, that precise due process give-and-take is exactly what this lawsuit is premised upon.

Due process does not require flawless or perfect process. Neither does it require courtesy. Constitutionally adequate process alone suffices. Accordingly, in light of the foregoing discussion, Plaintiff's due process claim is also dismissed with prejudice.

### D.   Defendants' Motion To Dismiss Is Granted As To Plaintiff's Claim For Injunctive Relief.

In a separate count contained within his amended complaint, the Plaintiff attempts to state a claim for injunctive relief. This claim fails for two reasons. First,

---

[105]   *Id.* at 406.

[106]   149 F. Supp. 3d 530, 539 (E.D. Pa. 2016), *aff'd,* No. 16-1720, 2017 WL 1906744 (3d Cir. May 9, 2017).

having determined that the Plaintiff's First and Fourteenth Amendment rights have not been violated, there is "no longer a live dispute which would warrant" preliminary or permanent injunctive relief.[107]

Second, the Third Circuit has previously held that "injunctive relief is a remedy rather than a cause of action."[108] A number of other courts have reached similar conclusions.[109] While the plaintiff is able to "request injunctive relief in connection with a substantive claim,"[110] asserting injunctive relief as a separate claim is "inappropriate."[111]

Even if Mr. Sundberg's earlier claims had not been dismissed, a permanent injunction would still be inappropriate. A plaintiff must satisfy the well-known four-factor test in order to prove entitlement to a permanent injunction. In particular, the plaintiff must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of

---

[107] *Chruby v. Kowaleski*, 2012 WL 12875987 (W.D. Pa. June 5, 2012).

[108] *Chruby v. Kowaleski*, 534 Fed.Appx. 156, 160 (3d Cir. 2013).

[109] *Tolia v. Dunkin Brands*, No. 11–3656 JLL, 2011 WL 6132102, at *6 n. 5 (D.N.J. Oct. 7, 2011) report and recommendation adopted, No. 11–3656 JLL, 2011 WL 6132271 (D.N.J. Dec. 7, 2011) (citing nine cases from various courts holding that injunction is not a separate cause of action).

[110] *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F.Supp.2d 452, 465 (E.D. Pa. 2013).

[111] *Id.*

hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.[112]

The Plaintiff has not alleged sufficient facts to survive a motion to dismiss as

to injunctive relief. Indeed, he has not pled facts that would establish the elements

for a permanent injunction. His conclusory statements that the individual

Defendants have violated his constitutional rights do not state a claim for relief

warranting injunctive relief.

Because the Plaintiff's claims under the First and Fourteenth Amendments

have been dismissed, and because injunctive relief is more accurately formulated

as a remedy rather than a cause of action, the Defendants' motion to dismiss is

granted with prejudice as to that particular claim for relief as well.

**E.  Plaintiff Has Not Pled Sufficient Facts To Plausible State A Claim Against The School Board.**

Under *Monell v. New York City Dept. of Social Servs.*, "a school board can

be held responsible for a constitutional violation . . . only if the violation occurred

as a result of a policy, custom or practice established or approved by the

board."[113]  "However, a school board cannot be held liable for a constitutional

violation under a *respondeat superior* theory."[114] Instead, the plaintiff must allege

---

[112]  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

[113]  *C.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir.2000) (citing 436 U.S. 658 (1978)).

[114]  *George v. Bd. of Educ. of the Twp. of Millburn*, 34 F. Supp. 3d 442, 458 (D.N.J. 2014).

that the school board "established or approved a policy, custom, or practice" or "effectively turn[ed] a blind eye" to the complained-of conduct.[115]

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."[116] "Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved."[117]

Plaintiff does not plead sufficient facts to suggest that the School Board implemented the kind of policy required by *Monell*. Indeed, certain allegations contained in the amended complaint make clear that the individual Defendants acted "without consulting with the School Board."[118] In addition to their failure on the merits as discussed above, the Plaintiff's claims against the School Board are dismissed with prejudice on this parallel ground as well.

## F. The Defendants Are Entitled To Sovereign Immunity As To Each Of Plaintiff's Claims.

I also hold that Plaintiff's claims fail for yet another reason: even if Plaintiff could establish that his constitutional rights were violated, the Defendants are

---

[115] *Id.*

[116] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

[117] *Id. See also Anything to Rent Lease Wholesale, Inc. v. Hughesville Borough*, No. 4:16-CV-00895, 2017 WL 736859, at *5 (M.D. Pa. Feb. 24, 2017).

[118] Am. Compl. ¶ 73.

entitled to qualified immunity. Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[119] Such immunity attaches to officials whether the official's actions were a mistake of law, of fact, or a combination of the two.[120] A primary purpose of the qualified immunity doctrine is to shield an official from personal liability when that official "reasonably believes that his or her conduct complies with the law."[121]

When examining whether or not qualified immunity is appropriate, courts considers two issues. The first is whether the official's conduct violated a constitutional or federal right.[122] The second is whether the right at issue was clearly established.[123] A right has been clearly established when that right's contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[124] The unlawfulness of the act in question

---

[119]  *Harlow v. Fitzgerald*, 457 U.S. 800, at 818 (1982).

[120]  *Groh v. Ramirez*, 540 U.S. 551, at 567 (2004).

[121]  *Pearson v. Callahan*, 555 U.S. 223, at 244 (2009).

[122]  *Sharp v. Johnson*, 669 F.3d 144, at 159 (3d Cir. 2012) (citing *Saucier v. Katz*, 553, U.S. 194, at 201 (2001)).

[123]  *Id.*

[124]  *Anderson v. Creighton*, 483 U.S. 635, at 640 (1987).

must be apparent to a reasonable person in order to decide that qualified immunity would be inappropriate.[125]

Further, the Supreme Court requires district courts to exercise their discretion in determining which of the two *Saucier* prongs above should be addressed first in light of the facts of any given case. In *Pearson*, Justice Samuel Alito explained that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory."[126] Instead, the Court instructed that "the judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[127]

This Court has already addressed its decision as to the constitutionality and statutory validity of the Defendants' actions, and has found that those actions did not violate any constitutional or federal rights. As such, qualified immunity could be granted on that basis alone, because the Plaintiff is required to establish both prongs of the *Saucier* test. The Court will, however, reach a determination on the second prong for the record.

---

[125] *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, at 344–45 (1986)).

[126] *Pearson*, 555 U.S. at 236.

[127] *Id.*

Plaintiff's allegations do not give rise to any reasonable inference that such rights were clearly established. In fact, Plaintiff's attempts to strip away Defendants' entitlement to qualified immunity are expressed "at much too high a level of abstraction"—in clear contravention of the Third Circuit's recent decision in *Zaloga v. Borough of Moosic*.[128] In *Zaloga*, the Third Circuit made clear that "it is not sufficient to conclude" that a generalized right against government interference with a protected right exists.[129] Rather, the district court "must attend to context" and "consider . . . the circumstances confronting [the state actor]" at that particular moment in time.[130] This construction ensures that judges remain focused upon the core question in qualified immunity cases: "whether a reasonable state actor could have believed his conduct was lawful."[131]

"Public school officials are entitled to qualified immunity against constitutional claims when their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[132] Thus, the narrow question as far as qualified immunity is concerned is whether reasonable school officials in the position of each Defendant here would

---

[128] 841 F.3d 170, 175 (3d Cir. 2016) (Jordan, J.).

[129] *Id.*

[130] *Id.*

[131] *Id.*

[132] *Mohammed ex rel. Mohammed v. Sch. Dist. of Philadelphia*, 355 F. Supp. 2d 779, 788 n.49 (E.D. Pa. 2005), *aff'd sub nom. Mohammed v. Sch. Dist. of Philadelphia*, 196 F. App'x 79 (3d Cir. 2006).

have understood beyond debate that their refusing to renew a one-year athletics contract violated a coach's constitutional rights—where that coach had previously made statements regarding administration of the School District's athletics programs.

As the Third Circuit has explained, qualified immunity will attach absent "a robust consensus of cases" suggesting otherwise.[133] That robust consensus of cases is entirely absent here. Indeed, were I to deny the application of qualified immunity here, it would be difficult to foresee circumstances in which qualified immunity would ever apply in the context of academic employment decisions. Not only was the underlying conduct not unlawful but it was not commemorated by sufficient case law to the contrary warranting the stripping away of this core federalist protection. Accordingly, the motion to dismiss could be granted on this independent ground alone.

### G. Defendants' Motion to Dismiss Granted With Prejudice, Because Subsequent Amendment Would Be Futile And Because Plaintiff Has Already Had Opportunity to Re-plead.

Federal Rule of Civil Procedure 15 sets forth the mechanisms for amending a pleading prior to trial. Section 15(a)(1) applies to amendments as a matter of course. Section 15(a)(2), entitled "Other Amendments," explains that "[i]n all other cases, a party may amend its pleading only with the opposing party's written

---

[133] *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015) (Vanaskie, J.).

consent or the court's leave. The court should freely give leave when justice so requires."

The Third Circuit has "previously discussed when a court may deny leave to amend under Rule 15(a)(2)."[134] In *Shane v. Faver*, for example, then Circuit Judge Samuel A. Alito, Jr. stated that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[135] "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."[136] "In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."[137]

"Moreover, substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend."[138] "The issue of prejudice requires that we focus on the hardship to the [opposing party] if the amendment were permitted."[139] "Specifically, we have considered whether allowing an amendment

---

[134] *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008).

[135] *Shane v. Faver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (Alito, J.).

[136] *Shane*, 213 F.3d at 115.

[137] *Id.*

[138] *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

[139] *Id.*

would result in additional discovery, cost, and preparation to defend against new facts or new theories."[140]

"The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[141] "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment."[142] For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend."[143]

Dismissal of Plaintiff's First and Fourteenth Amendment claims with prejudice is warranted on two separate grounds. First, the Plaintiff has already had the opportunity to re-plead following the filing of the first motion to dismiss.[144] Second, further amendment would be futile. After the Defendants filed their first motion to dismiss and briefed the issues, the Plaintiff chose to amend his pleadings

---

[140] *Id.*

[141] *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518 (3d Cir. 1988).

[142] *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 180, 182 (1962).

[143] *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (citing 6 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1487). See also *Vosgerichian v. Commodore Int'l Ltd.*, No. Civ. A. 92-CV-4867, 1998 WL 966026, at * 3 (E.D. Pa. Nov 6, 1998) aff'd sub nom *Vosgerichian v. Commodore Int'l*, 191 F.3d 446 (3d Cir. 1999).

[144] The first motion to dismiss is denied as moot because it covered similar but less than all substance compared to that contained in the renewed motion to dismiss. *See Schoonmaker v. Hubner*, No. CIV. A. 92-5471, 1993 WL 311776, at *10 (E.D. Pa. Aug. 9, 1993) ("[T]he filing of the amended complaint technically moots defendants' motions to dismiss the complaint.").

rather than file a response brief. The amended complaint did little if anything to address the arguments raised by defense counsel, despite Plaintiff's counsel having been put on notice of the initial complaint's defects.

Because the Plaintiff has already had the opportunity to replead and further amendment would be futile in my judgment, Defendants' motion to dismiss is granted with prejudice.

## IV.    CONCLUSION

Ultimately, I reiterate that my narrow role in this matter is not to judge whether Mr. Sundberg acted appropriately or whether the School District treated him civilly. Those are questions that fall beyond my jurisdiction. The narrow question this litigation presents is whether the School District's decision not to rehire Mr. Sundberg as a coach violated his constitutional rights. The sparse complaint did not make those violations plausible and certainly cannot "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[145]

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[145]    *Iqbal*, 556 U.S. at 678–79.